IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| BENTON MILEY | § | |
| VS. | § | CIVIL ACTION NO. 1:22-cv-243 |
| WARDEN, FCI BEAUMONT LOW | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Benton Miley, an inmate confined within the Bureau of Prisons ("BOP"), proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a prison disciplinary conviction.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Respondent has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Doc. #6.) As Respondent has presented information outside the pleadings, the filing will be considered as a Motion for Summary Judgment. See FED.R.CIV.P. 12(d). Petitioner has filed a Response to the Motion. (Doc. #7.)

Factual Background

On September 29, 2021, Officer L. Rose Gardea wrote incident report number 3552244. (Doc. #6-1, p.50.). In the incident report, Petitioner was charged with possession of drugs/alcohol.

A DHO conducted a disciplinary hearing on October 5. Petitioner was found guilty of the offense with which he was charged. The punishment assessed included the forfeiture of 41 days of good conduct time.

The DHO explained her finding of guilty as follows:

The inmate's due process rights were read and reviewed by the DHO to the inmate. The DHO confirmed the inmate received a copy of the incident report, did not want a staff representative, did not want to call witnesses and had no documentary

> evidence to present. The inmate understood his due process rights and was ready to proceed with the disciplinary process.
>
> [The incident report stated that] on September 29, 2021, at approximately 12:45 p.m., while conducting a search of Unit WA, cell 7, I discovered a salt shaker inside the secured locker belonging to inmate Miley, Benton . . . . Upon further inspection, the salt shaker was found to contain a bindle which when opened contained a pink, granular substance. The substance was tested using NIK test kits A, which turned an orange to brown color, and U, which turned a blue color indicating a positive result for methamphetamine.
>
> Inmate's statement: "No comment, but the salt shaker was mine, but I don't know about the other stuff."
>
> Based upon these facts, the DHO is convinced that inmate Miley, Benton . . . did commit the prohibited act of possession of narcotics in violation of code 113 . . . . The DHO based her decision on the greater weight along with your statement "No comment, but the salt shaker was mine, but I don't know about the other stuff." You admitted that the salt shaker did in fact belong to you where the actual substance was found. The substance was tested using NIK test kits A, which turned an orange to brown color, and U, which turned a blue color indicating a positive result for methamphetamine. You did not refute this charge against you. Possession of drugs inside a correctional environment is in direct violation of the rules of this facility and will not be tolerated.

(Doc. #6-1, pp. 44-45.).

In a Declaration attached to the Motion for Summary Judgment, the DHO, Ardana Tate, states that in determining Petitioner was guilty, she relied on the Narcotics Identification Kits ("NIK") and images which reflected that the substance tested was positive for methamphetamine. In describing the tests, Ms. Tate states:

> Two NIK test kits were utilized to identify the substance. Test kit A, a general screening test, was employed first; that result turned an orange/brown color, indicating the presence of methamphetamines. Accordingly, test kit U, specifically designed to detect methamphetamine, was also employed; that test kit turned blue, indicating a presumptive positive result for methamphetamine.

(Doc. #6-1, p.40.).

## Grounds for Review

Petitioner asserts the following grounds for review: (a) he was denied the right to have the substance found in the salt shaker retested; (b) the investigating officer failed to follow policy by not contacting Petitioner to allow him to explain the incident, request witnesses or request other evidence; and (c) he has not been permitted to exhaust his administrative remedies. In his Response

to the Motion for Summary Judgment, Petitioner also asserts he was improperly denied a staff representative and that an unidentified confidential informant was improperly used by prison officials.

## Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable [finder of fact] could [find in favor of] the nonmoving party." *Anderson*, 477 U.S. at 248.

On summary judgment, "[t]he moving party has the burden of proving there is no genuine [dispute] of material fact and that it is entitled to judgment as a matter of law." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246 (5th Cir. 2003). If the moving party meets this burden, "the non-moving party must show that summary judgment is not appropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." *Rivera*, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

## Analysis

Prison inmates who lose good conduct time credits as a result of prison disciplinary convictions are entitled to the procedural due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court concluded that inmates are entitled to: (1) written notice of the charges at least 24 hours before the hearing; (2) a written statement of the fact-finder regarding the evidence relied on and the reason for the disciplinary action and (3) the opportunity to call witnesses and present documentary evidence on their own behalf at the disciplinary hearing. *Wolff*, 418 U.S. at 563-66.

In addition, there must have been "some evidence" to support the petitioner's conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1983). The result of a prison disciplinary proceeding will be overturned by a federal court "only where there is no evidence whatsoever to support the decision of the prison officials." *Reeves v. Pettcox*, 19 F.3d 1060, 1062 (5th Cir. 1994).

"Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question for the court is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). "Federal Courts will not review the sufficiency of the evidence at a disciplinary hearing; a finding of guilt requires only the support of 'some facts' or 'any evidence at all.'" *Gibbs v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986) (citation omitted).

*Failure to Have Substance Retested*

Petitioner states that on September 30, he spoke with the unit counselor concerning the incident report. He told that counselor he had asked the investigating officer to have the substance tested by an outside laboratory as he did not believe the positive test for methamphetamine was correct. Petitioner contends the unit counselor told him the substance would be sent to a laboratory. However, this was not done.

Petitioner asserts he had a constitutional right to request independent testing following the use of what he describes as the "notoriously unreliable" NIK field test. He states the denial of his request to have the substance tested in a laboratory deprived him of due process.

Despite Petitioner's contention, inmates are not entitled to independent drug testing because such testing would create overly burdensome administrative requirements. *Henson v. U. S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Kuttab v. Jeter*, 132 F. App'x 23, 25 (5th Cir. 2005). The BOP has a "strong interest" in avoiding burdensome administrative requirements and in acting

swiftly on the basis of evidence that might be insufficient in less exigent circumstances. *Henson*, 213 F.3d at 898. In *Henson*, like in this case, the petitioner unsuccessfully argued he was entitled to additional testing after a NIK field test indicated the substance in his pipe was marijuana. *Id*. at 898, n.3.

The result of the NIK test constituted some evidence of Petitioner's guilt. As there was some evidence of Petitioner's guilt, and as there would still be some evidence even if Petitioner obtained a contradictory result from testing in a laboratory, the failure to provide for an alternative test did not violate Petitioner's right to due process. *Henson*, 213 F.3d at 898-99.

*Failure to Contact Petitioner*

Petitioner states that in conducting his investigation of the incident, Lieutenant Reyes failed to comply with the BOP's policy statement 5270.09. He asserts Lieutenant Reyes failed to take a statement from him as required by the policy statement. Petitioner states he should also have been given a chance to request witnesses or ask for additional evidence. He further asserts that Policy Statement 6060.07, which governs the taking of urine samples was violated because all samples were not sent to the laboratory within 72 hours after collection. Petitioner states this was not done and that the sample was not kept under constant surveillance as required.

Even if Petitioner has accurately alleged a violation of prison regulations, failure to follow such regulations does not necessarily establish a violation of due process because the required procedural protections may nevertheless have been provided. *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989). As described above, inmates who are deprived of good conduct credits are entitled to (1) written notice of the charge at least 24 hours before the hearing; (2) a written statement of the evidence relied on and reasons for the punishment and (3) the opportunity to call witnesses and present evidence in their defense. *Wolff*, 418 U.S. at 563-66. There is no indication Petitioner did not receive these procedural protections. As a result, Petitioner's assertion that prison regulations were not complied with do not provide him with a basis for relief. *Jacques v. Bureau of Prisons*, 632 F. App'x 225, 226 (5th Cir. 2016).

*Staff Representative*

Petitioner states he asked that his case manager, Mr. Killen, be present at his hearing to act as his staff representative. He states that on the day of the hearing, the DHO told him she had attempted to call Mr. Killen several times but was unable to reach him. She told Petitioner that while the hearing could be delayed, Petitioner would have to remain in the Special Housing Unit until the hearing was held. Petitioner states that as he did not want to remain in the Special Housing Unit, he chose to proceed with the hearing.

An inmate does not have a constitutionally protected right to representation during prison disciplinary hearings. *Wolff*, 418 U.S. at 570). However, if there are complex issues involved or the inmate is illiterate, he should be allowed to seek assistance from another inmate or staff. *Id*.

Petitioner's filings in this matter demonstrate he is not illiterate. In addition, the disciplinary proceeding did not involve complex issues. As a result, the failure to provide Petitioner with a staff representative did not violate due process.

*Confidential Informant*

Petitioner states he has been incarcerated for 31 years without receiving a disciplinary charge. He identified a fellow inmate who, aware of Petitioner's history, told him he believed the drugs had been planted in Petitioner's locker by a fellow inmate. Petitioner states the fellow inmate told him that the charging officer stated he searched Petitioner's locker because he had a reliable informant. Petitioner states he never received information establishing the credibility of the informant.

In *Broussard v. Johnson*, 253 F.3d 874, 875 (5th Cir. 2001), a confidential informant gave an officer a tip that two inmates were planing an escape and had hidden bolt cutters in the kitchen where they worked. The bolt cutters were discovered and the inmates were convicted of disciplinary offenses. The United States Court of Appeals for the Fifth Circuit held that the inmates' right to due process was violated when the disciplinary board considered the confidential informant's tip as

probative evidence, with no evidence in the record to support the reliability of the informant. 253 F.3d at 877.

Even if it is assumed the charging officer relied on information from an informant in determining whether to search Petitioner's locker, this case differs from *Broussard*. Here, unlike in *Broussard*, the DHO did not rely on information from an informant in finding Petitioner guilty. Instead, the DHO relied on information in the incident report regarding where the salt shaker was found and the positive results of the NIK tests. As the DHO did not rely on information from the informant, Petitioner was not entitled to information regarding the informant to determine whether the informant was reliable.

*Administrative Remedies*

Petitioner also asserts that staff interfered with his ability to exhaust his administrative remedies. Respondent asserts the Petition should be dismissed for failure to exhaust administrative remedies. However, in light of the conclusions reached above concerning the merits of Petitioner's grounds for review, it is not necessary to resolve the issue of whether administrative remedies were exhausted. As a result, even if staff members did interfere with Petitioner's ability to exhaust administrative remedies, Petitioner suffered no prejudice as a result of such actions.

## Conclusion

For the reasons set forth above, there is no genuine dispute of material fact as to whether any of Petitioner's grounds for review provide a basis for relief in this proceeding and Respondent is entitled to judgment as a matter law. The motion for summary judgment should therefore be granted.

## Recommendation

Respondent's Motion for Summary Judgment should be granted and this petition for writ of habeas corpus denied pursuant to Federal Rule of Civil Procedure 56.

<u>Objections</u>

Objections must be (1) specific, (2) in writing, and (3) served and filed within 14 days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(b) and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Serv. Auto. Ass'n.*, 79 F.3d 1415, 1429 (5th Cir. 1996) (*en banc*).

**SIGNED this the 7th day of July, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE